# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| Elena Olson and Paul Olson, | Case No.: 08-CV-1076 (DWF/RLE) |
| Plaintiff, | |
| vs. | **MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT DAVID KRAMER'S MOTION TO DISMISS** |
| Aegis Corporation, Credit Collections Defense Network, and David Kramer, | |
| Defendants. | |

## I. INTRODUCTION

Plaintiffs Elena and Paul Olson filed this suit, claiming Credit Collections Defense Network ("CCDN"), Aegis Corporation ("Aegis"), and David Kramer ("Kramer"), an employee of Aegis, violated federal and state consumer protection laws in their sale of the Debt Jurisprudence process to Mr. and Mrs. Olson. (Compl., ¶ 3.)

David Kramer now moves, pursuant to Federal Rule of Civil Procedure 12(b)(2), to dismiss the plaintiffs' claims against him for lack of personal jurisdiction. Mr. Kramer is a resident of the State of Missouri and has never transacted business in the State of Minnesota. (Answer, ¶ 1, 11; Affidavit of M. David Kramer ("Kramer Aff.") at ¶ 3.) Mr. Kramer has not established sufficient minimum contacts with the State of Minnesota such that this Court may exercise personal jurisdiction over him: (1) at most, he has but a handful of telephone and electronic mail contacts with the state; (2) these contacts are attenuated rather than substantial in quality; (3) the cause of action does not arise out of these contacts; and (4) Minnesota is not a convenient forum for Mr. Kramer.

Because the exercise of personal jurisdiction over Mr. Kramer by this Court would violate his due process rights under the Fifth Amendment, the claims against Mr. Kramer should be dismissed.

## II. SUMMARY OF THE ALLEGED FACTS

Defendant David Kramer is an employee of Aegis Corporation. (Answer, ¶11.) He resides in the State of Missouri. (*Id.*; Kramer Aff. at ¶ 1.) Neither David Kramer nor Aegis has conducted business in the State of Minnesota. (Answer, ¶ 1; Kramer Aff. at ¶ 3.) Between October 2, 2006, and October 10, 2007, Aegis had a "Referral Agreement" with RK Lock & Associates, who conduct business as Credit Collections Defense Network (hereinafter "CCDN") (*Id.*, ¶ 2.)

Plaintiff Elena Olson first learned of the Debt Jurisprudence process over the internet. (Compl., ¶ 13.) The Aegis website she viewed detailed the three steps of the Debt-Jurisprudence process, created by CCDN. (Compl., ¶¶ 15-21.) Only after viewing the information on the webpage did Mrs. Olson contact Aegis Corporation by telephone. (Compl., ¶ 22.)

On May 7, 2007, Plaintiff Elena Olson telephoned the Aegis Corporation and spoke with David Kramer after initially speaking with another unrelated representative of CCDN. (Compl., ¶ 22; Answer, ¶ 22.) Mrs. Olson claims that Mr. Kramer explained the Debt Jurisprudence process to her, stating that it would "wipe away" her debt. (Compl., ¶ 23.) She also claims that he did not inform her of any "negative consequences" that might result from the process. (*Id.* at ¶ 24.)

In response to their request, Mr. and Mrs. Olson received a "Consumer Account Service Agreement." (*Id.* at ¶ 25; Answer, ¶ 25.) This document was signed electronically by David Kramer, on behalf of the Debt Jurisprudence Division. (Compl.,

Ex. A.) Significantly, the document clearly states that it is an "Agreement between Aegis Corporation – Debt Jurisprudence Division (Aegis) and our Clients (Client)." (*Id.*)

In response to her return of the enrollment materials, Mrs. Olson received a confirmation e-mail from David Kramer at Aegis on May 9, 2007. (Compl., ¶ 31.) The e-mail contained a brief description of the Debt Jurisprudence process and informed Mrs. Olson that CCDN (not Aegis) would contact her soon. (*Id.*)

From this point forward, all of Mrs. Olson's contacts were with CCDN. (*See id.*, ¶¶ 32-66.)

The Olsons commenced this action on April 16, 2008 against Aegis, CCDN, and Kramer, claiming (1) violations of the Federal Credit Repair Organization Act, (2) violations of the Minnesota Credit Services Organization Act, (3) violations of the Minnesota Consumer Fraud Act, (4) negligent misrepresentation, (5) fraud, (6) breach of contract, and (7) unauthorized practice of law. Based on these negligible contacts, the Olsons nonetheless assert that this Court may exercise personal jurisdiction in this action over Mr. Kramer without violating his due process rights.

### III. STANDARD OF REVIEW

**A.     Motion to Dismiss.**

A motion to dismiss will be granted if Plaintiff "can prove no set of facts which would entitle him to relief." *Krambeer v. Eisenberg*, 923 F. Supp. 1170, 1173 (D. Minn. 1996) (citing *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986). At the pre-trial stage, although factual disputes are resolved in favor of the Plaintiff, the Plaintiff must establish a prima facie showing of jurisdiction to defeat a motion to dismiss. *Minn. Public Radio v. Va. Beach Ed. Broadcasting Found., Inc.*, 519 F. Supp. 2d 970, 972 (D. Minn. 2007) (hereinafter *MPR*).

**B.      Lack of Personal Jurisdiction.**

Determining personal jurisdiction in a federal court is a two-part process: both state and constitutional standards must be met. *Wessels, Arnold & Henderson v. Nat'l Med. Waste, Inc.*, 65 F.3d 1427, 1431 (8th Cir. 1995) (citing *Wines v. Lake Havasu Boat Mfg.*, 846 F.2d 40, 42 (8th Cir. 1988); *Krambeer*, 923 F. Supp. at 1173.

**1.      Minnesota's Long Arm Statute.**

The state inquiry is determined under Minnesota's Long-Arm Statute, *see* Minn. Stat. § 543.19; *see also MPR*, 519 F. Supp. 2d at 973. Because the Minnesota Supreme Court has determined that the Long-Arm statute extends the state's jurisdiction to the fullest extent consistent with constitutional due process, this Court need only evaluate whether constitutional due process has been met. *St. Paul Fire and Marine Ins. Co. v. Courtney Enter., Inc.*, 270 F.3d 621, 623 (8th Cir. 2001); *Wessels*, F.3d at 1431; *Soo Line R. Co. v. Hawker Siddeley Canada, Inc.*, 950 F.2d 526, 528 (8th Cir. 1991); *Paulucci v. William Morris Agency*, 952 F.Supp. 1335, 1338 (D. Minn. 1997); *Krambeer*, 923 F.Supp at 1174; *Valspar Corp. v. Lukken Color Corp.*, 495 N.W.2d 408 (Minn. 1992).

**2.      Constitutional Due Process.**

The constitutional touchstone for personal jurisdiction remains "whether Defendant has established sufficient minimum contacts with Minnesota such that the exercise of jurisdiction here does not violate traditional notions of fair play and substantial justice." *Krambeer*, 923 F.Supp at 1174 (citing *Burger King Corp. v. Rudwewicz*, 471 U.S. 462, 474, (1985); *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). Indeed, "[t]he defendant's conduct and connection with the state must be such that the defendant should 'reasonably anticipate being haled into court there.'" *Wessels*, 65 F.3d at 1432 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297

(1980).  Reasonable anticipation of court proceedings arises only from substantial, purposeful, and bilateral contact:

> The defendant's acts must be substantial enough to give clear notice that it would be subject to suit in the forum state.  *World-Wide Volkswagen*, 444 U.S. at 297.  However, the unilateral activities of one claiming some relationship with the non-resident defendant is not enough to satisfy the minimum contacts requirement.  *Hanson v. Denckla*, 357 U.S. 235, 253 (1958).  It is essential in each case that there is some act by which the "defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."  *Id.*  Where a forum state seeks specific personal jurisdiction over a non-resident defendant, due process is satisfied if "the defendant has 'purposely directed' his activities at residents of the forum . . . and the litigation results from alleged injuries that 'arise out of or relate to' those activities."  *Burger King*, 471 U.S. at 472 (internal citations omitted).

*Wessels*, 65 F.2d. at 1432.  The "purposeful availment" requirement ensures that defendants will not be subject to jurisdiction based on contacts that were "random," "fortuitous," or "attenuated," or based on the "unilateral activity" of another party or third person.  *Burger King*, 471 U.S. at 475 (internal citations omitted).

### 3.    **Eighth Circuit Precedent.**

In conjunction with these basic principles of due process, Minnesota Courts and Eighth Circuit Courts have adopted a five-factor test to determine whether the exercise of jurisdiction in a case comports with due process:

(1) the quantity of the contacts with the forum state;

(2) the nature and quality of the contacts with the forum state;

(3) the relation of the cause of action to the contacts;

(4) the state's interest in providing a forum; and

(5) the convenience to the parties.

*See Wessels*, 65 F.3d at 1431; *Soo Line*, 950 F.2d at 529; *MPR*, 519 F. Supp. 2d at 974; *Pallucci*, 952 F. Supp. at 1339; *St. Croix Waterway Ass'n v. Meyer*, 942 F. Supp. 435, 441 (1996); *Krambeer*, 923 F. Supp. at 1174; *Stainbrook v. Kent*, 771 F. Supp 988, 990 (D. Minn 1991); *Nat'l City Bank v. Ceresota Mill Ltd. P'ship*, 488 N.W.2d 248, 252-53 (Minn. 1992).

The first three factors are the most important, and determine whether minimum contacts exist; factors four and five are secondary, and determine whether jurisdiction is reasonable according to traditional notions of fair play and substantial justice. *Soo Line*, 950 F.2d at 529; *Stainbrook*, 771 F. Supp. at 990; *Juelich v. Yamazaki Mazak Optonics Corp.*, 682 N.W.2d 565, 570 (Minn. 2004); *Dent-Air, Inc. v. Beech Mountain Air Serv., Inc.,* 332 N.W.2d 904, 907 (Minn. 1983).

Admittedly, personal jurisdiction has been found as a result of only one contact with the forum state. In *Marquette National Bank of Minneapolis v. Norris*, the court found personal jurisdiction over Illinois defendants based on "a single transaction contact." 270 N.W.2d 290, 295 (Minn. Ct. App. 1978). The court looked at the transaction as a whole as a single contact, rather than "artificially counting the number of telephone or mail exchanges required to complete the transaction." *Id.* Defendants had contacted Marquette Bank to negotiate a stock deal. *Id.* at 293. In finding personal jurisdiction, the court stated, "[t]his court, consistent with the rule of *Hanson v. Denckla*, . . . has considered a defendant's having purposefully solicited contacts with a Minnesota resident or having initiated or induced the transaction out of which the cause of action arise as a crucial factor justifying the assumption of personal jurisdiction." *Id.* at 296 (citing *Hanson v. Denckla*, 357 U.S. 235 (1958)).

In contrast, however, Minnesota courts have found personal jurisdiction lacking in cases with multiple contacts. In *Schuck v. Champs Food Systems*, for example, the court

found that it did not have personal jurisdiction over a Canadian architectural firm that had designed a Minnesota restaurant. 424 N.W.2d 567 (Minn. Ct. App. 1988). The firm's contacts with Minnesota included correspondence sent three times, correspondence received eight times, and three telephone conversations. *Id.* at 570. The court deemed these contacts "minimal." *Id.* It held that they were "insufficient" to establish personal jurisdiction because "the only purposeful availment was Champ's unilateral decision to construct a restaurant in Minnesota. A contact with the forum state is insufficient if it resulted from the 'unilateral activity of another party or third person.'" *Id.* (citing *Burger King*, 471 U.S. at 475). *See also Maiers Lumber & Supply, Inc. v. Chancey Trailers*, 354 N.W.2d 585 (Minn. Ct. App. 1984) (holding that personal jurisdiction was improper despite seven months of contract negotiations by telephone and physical delivery of tractors into Minnesota).

## IV. ARGUMENT

Mr. Kramer's contacts with Minnesota are insufficient to establish personal jurisdiction. This conclusion may be reached by analyzing the basic tenets of due process in terms of the five factors set out by the Eighth Circuit. Mr. Kramer has not established minimum contacts in Minnesota, as shown by the first three factors. Fair play and substantial justice weigh in favor of not exercising jurisdiction as well, as shown by the last two factors. In short, the only factor weighing in favor of jurisdiction is the Olsons' residence here. The quantity and quality of Mr. Kramer's contacts with Minnesota weigh strongly against personal jurisdiction.

**A.     The Quantity of Mr. Kramer's Contacts with Minnesota Is Minimal.**

Mr. Kramer's contacts with Minnesota include some phone conversations with Ms. Olson, all initiated by her, and a few e-mails, the first when Mr. Kramer forwarded, at Ms. Olson's request, the enrollment agreement on behalf of Aegis to the Plaintiff, the

second merely acknowledging receipt of her enrollment materials, and finally, an e-mail exchange roughly three months after Plaintiff's initial enrollment, when she wished to add an account. (Kramer Aff. at ¶ 5.) All told, it appears that Ms. Olson called Aegis approximately eight times; of those initiated phone calls, the Plaintiff left messages three times with Aegis and spoke with Mr. Kramer (on behalf of Aegis) five times. (*Id.*) Mr. Kramer returned Plaintiff's phone calls approximately five times, leaving messages four of those times, and actually speaking with Ms. Olson once. (*Id.*) Finally, Mr. Kramer's electronic signature was on the Service Agreement between Aegis and the Plaintiffs, but only in his capacity as a corporate officer of Aegis, and not in any individual capacity.

When contacts are as few as these, which occurred over several months, the number of contacts alone cannot be dispositive. The analysis then relies on the nature and quality of the contacts. *Krambeer*, 923 F. Supp. at 1174; *Maiers Lumber*, 354 N.W.2d at 587; *Marquette*, 270 N.W.2d at 295; *Schuchk*, 424 N.W.2d at 570.

**B.     The Nature and Quality of Mr. Kramer's Contacts with Minnesota are Insufficient to Support Personal Jurisdiction.**

For this Court to exercise personal jurisdiction over Mr. Kramer, the nature and quality of his contacts with Minnesota must be such that he "should reasonably anticipate being haled into court here." *Krambeer*, 923 F. Supp. at 1175 (citing *World-Wide Volkswagen*, 444 U.S. at 295). "Defendants' contacts with the forum state, not their contacts with residents of the forum, must be considered by the Court." *Id.* (citing *West Am. Ins. Co. v. Westin, Inc.*, 337 N.W.2d 676, 678 (Minn. 1983)). The Eighth Circuit has held that although minimum contacts need not include physical presence, they must be substantial to support jurisdiction. *See, e.g.*, *Bell Paper Box, Inc. v. Trans W. Polymers, Inc.*, 53 F.3d 920, 923 (8th Cir. 1995) ("The use of interstate facilities, such as telephones or mail, is a secondary or ancillary factor and cannot alone provide the minimum contacts required by due process." (citations omitted)); (*General Elec. Capital Corp. v.*

*Grossman*, 991 F.2d 1376, 1388 (8th Cir. 1993) (finding no personal jurisdiction over defendant accounting firms in a lawsuit based on financial statements sent by defendants into forum state).  Even the existence of a contract cannot automatically establish sufficient minimum contacts; it is the "future consequences" of the contract "which themselves are the real object of the business transaction."  *Burger King*, 471 U.S. at 478.

In the instant case, Mr. Kramer's only contacts with Minnesota were by electronic mail and phone.  These contacts resulted directly from and in response to Mrs. Olson's actions.  By Mrs. Olson's own admission, she initiated the first phone call to Aegis.  (Compl., ¶ 22.)  She also prompted the forwarding of the Service Agreement to her through that initial phone call.  In short, Ms. Olson prompted the limited number of phone conversations and e-mail exchanges that she had with Mr. Kramer, who was, to be clear, acting solely on behalf of Aegis.  Mr. Kramer did not solicit her business, nor would he have telephoned or e-mailed Ms. Olson unless she had first affirmatively sought out Aegis' referral services.  Further, Mr. Kramer did not send the Service Agreement as a personal act, but rather as an agent of Aegis.  (Compl, ¶ 25.) Although Mr. Kramer's electronic signature was on it, the Agreement did not bind him personally; the document explicitly stated that it was an agreement between Aegis and the Olsons.  (Compl., Ex. A.)

Mr. Kramer's contacts therefore lack the "element of active inducement" necessary for a finding of personal jurisdiction.  *Maier*, 270 N.W.2d at 296; *see also Digi-Tel Holdings, Inc. v. Proteq Telecommc'ns (PTE), Ltd.*, 89 F.3d 519, 525 (8th Cir. 1996) (finding insufficient contacts, even though the nonresident defendant sent numerous letters and faxes and made several telephone calls to Minnesota, because plaintiff initiated contact and defendant "merely engaged with a purchaser who happened to reside in Minnesota"); *McQuay, Inc. v. Samuel Schlosberg, Inc.*, 321 F. Supp. 902, 908

(D. Minn. 1971) (declining to exercise jurisdiction over a non-resident defendant where plaintiff had initiated the contact and solicited defendant's business in another state). "[T]he mere unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State." *Soo Line*, 950 F.2d at 529 (citing *World-Wide Volkswagen*, 444 U.S. at 298 (citations omitted)). In this case, Mrs. Olson actively sought out Mr. Kramer as in *Schuck* above. Mr. Kramer's contacts with Minnesota—namely, a handful of phone conversations and e-mails with the Plaintiff and his signature on a contract that does not bind him personally—are "attenuated" rather than "substantial." *Burger King*, 471 U.S. at 467-77. Clearly, Mr. Kramer has not "purposefully availed" himself of the privilege of doing business in Minnesota. *World-Wide Volkswagen*, 444 U.S. at 297. To find otherwise would violate his due process rights.

**C.     Mr. Kramer's Contacts with Minnesota Are only Tangentially Related to the Cause of Action.**

Specific jurisdiction exists only when there is "a nexus between the defendant's contacts with the forum state and the subject matter" of the plaintiff's claim. *Paulucci*, 952 F. Supp. 1335 at 1340.[1] The Plaintiffs' claims in this case cannot be said to "arise out of" or "relate to" Mr. Kramer's contacts with Minnesota. *MPR*, 519 F. Supp. 2d at 974.

The heart of the Plaintiffs' claims arise out of their contract with CCDN and Aegis, rather than with Mr. Kramer. Though his signature is on the contract, Mr. Kramer

---

[1] General jurisdiction is also not applicable to this case. It "refers to the power of a State to adjudicate any cause of action, irrespective of where the cause of action arose, and it requires that the defendant have substantial contacts with the forum that are continuous and systematic." *MPR*, 519 F. Supp. 2d at 974 (citations omitted).

is not personally bound by it. The contract states only that Aegis represents CCDN, the agency in charge of the Debt Jurisprudence process. (Compl, Ex. A.)

Plaintiffs also state that their claims arise from one phone conversation between Mrs. Olson and Mr. Kramer. In this conversation, however, Mr. Kramer only told Mrs. Olson information that she already had read on the Debt Jurisprudence website. (Compl., ¶ 23, 14-21.) The same can be said for the subsequent confirmation e-mail. Because Mr. Kramer did not affirmatively represent information of his own making, the cause of action is more closely connected to Aegis and the website than to Mr. Kramer personally.

Further, any connection Mr. Kramer's contacts with Minnesota may have to the cause of action is outweighed by the nature of those contacts. *See Krambeer*, 923 F. Supp. 1176 (finding that connection was too attenuated to support jurisdiction despite cause of action arising from contact); *Schuck*, 424 N.W.2d at 571 (holding that although the design gave rise to the cause of action, "the connection is insufficient because nothing in the transaction gave rise to the anticipation of defending an action in Minnesota."). Merely carrying out one's day-to-day job responsibilities in Missouri does not, without more, give rise to an expectation of being brought into court in Minnesota.

D.  **Minnesota's Interest in Providing a Forum is not Sufficient to Establish Personal Jurisdiction.**

Minnesota does have an interest in providing a forum for its residents who allege an injury. *Krambeer*, 923 F. Supp. at 1176. This interest, however, is not based upon "a contact and cannot establish personal jurisdiction." *Schuck*, 424 N.W.2d at 571. Rather, courts place the primary focus on the quantity and quality of a defendant's contacts with Minnesota. *Krambeer*, 923 F. Supp at 1176 (citing *S.B. Schmidt Paper Co. v. A to Z Paper Co.*, 452 N.W.2d 485, 489 (Minn. Ct. App. 1990). Thus, although Minnesota might have an interest in providing a forum for the Olsons in this case, that interest is outweighed by the other factors already discussed.

**E.     Minnesota is an Inconvenient Forum for Mr. Kramer.**

With respect to the convenience of the parties, it is important to note that "[t]raditional notions of fair play contemplate that a defendant has a right to be sued in the jurisdiction and venue of his residence." *McQuay, Inc. v. Samuel Schlosberg, Inc.*, 321 F. Supp. 902, 908 (D. Minn. 1971). Because Mr. Kramer is a private citizen and a resident of Missouri, Minnesota is an inconvenient forum for him. This final factor, then, weighs against jurisdiction. *See Id.*; *Maiers*, 354 N.W.2d at 587.

**F.     The Exercise of Personal Jurisdiction by This Court would Violate Due Process.**

The sum of these five factors indicates that this Court does not have personal jurisdiction over Mr. Kramer. Mr. Kramer's contacts with Minnesota have not been of sufficient number or quality that he would reasonably expect to be haled into court here, and doing so would violate traditional notions of fair play and substantial justice.

## V. CONCLUSION

For the reasons stated above, Mr. Kramer respectfully requests that this Court dismiss plaintiffs' claims against him based on lack of personal jurisdiction. Mr. Kramer, a citizen of Missouri, has not set foot inside the State of Minnesota for at least ten (10) years, and has not conducted business here during that same time frame. (Kramer Aff. at ¶¶ 2-3.) Mr. Kramer has no business interests, property or employees in this State. Mr. Kramer has never availed himself of Minnesota's courts. (*Id.* at ¶ 4.) In short, the traditional notions of fair play and substantial justice dictate that Mr. Kramer should not be a Defendant here in his personal and individual capacity. Indeed, Aegis is already a participating Defendant in this case by way of its Answer, which has been previously filed with the Court. Mr. Kramer's presence as an individual Defendant is neither

justified nor necessary.  To that end, the Court is respectfully urged to grant Mr. Kramer's motion.

                                    Respectfully submitted,

Date:  June 24, 2008            **LARSON • KING, LLP**

By:  s/Stephen P. Laitinen
Stephen P. Laitinen (#239446)
2800 Wells Fargo Place
30 East Seventh Street
St. Paul, Minnesota  55101
Telephone:  (651) 312-6500
Facsimile:  (651) 312-6618

And

Dennis K. Hoffert (*Pro Hac Vice*)
Attorney at Law
P.O. Box 4600
St. Louis, MO  63108
Telephone:  (314) 566-5417
Facsimile:  (314)367-7115

*ATTORNEYS FOR DEFENDANTS AEGIS CORPORATION AND DAVID KRAMER*

LK#1232908v.1